U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE
JUN 06 2012
FILED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:12-cr-01-02-JD |
| ) | |
| PRINCE SAGE ) | |
| a/k/a/ "NEW YORK" ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, John P. Kacavas, United States Attorney for the District of New Hampshire, and the defendant, Prince Sage, and the defendant's attorney, Paul J. Garrity, Esquire, enter into the following Plea Agreement:

1. **The Plea and The Offense**.

The defendant, Prince Sage, agrees to plead guilty to count one of the January 11, 2012, Indictment charging him with the December 19, 2011 robbery of the Northeast Credit Union, 340 Wilson Street, Manchester, New Hampshire. In exchange for the defendant's guilty plea, the United States agrees to recommend a sentence at the low end of the applicable advisory federal sentencing guideline calculated by the court in this case.

2. **The Statute and Elements of the Offense**.

Title 18, United States Code, Section 2113(a) provides, in pertinent part:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;
>
> . . . [s]hall be fined under this title or imprisoned not more than twenty

-1-

years, or both.

18 U.S.C. § 2113(a) (West 2011).

The defendant understands that the offense alleged in count one of the January 11, 2012 Indictment to which he is pleading guilty has the following elements, each of which the government would have to prove beyond a reasonable doubt at trial:

First, that Prince Sage intentionally took money belonging to the credit union from a credit union employee or while a credit union employee was present;

Second, that Prince Sage took the money from the credit union by the use of force, violence or intimidation; and

Third, that on the date of the robbery, the credit union was an institution the deposits of which were insured by the National Credit Union Administration Board.

3 L. Sand et al., Modern Federal Jury Instructions, ¶ 53.01, Instruction 53-2 (2000). *Pattern Jury Instructions, First Circuit Criminal Cases, Instruction 4.18* (1998).

3. **Offense Conduct**.

With respect to count one of the January 11, 2012, Indictment, the government would establish the following facts that would prove the elements of bank robbery beyond a reasonable doubt:

The Northeast Credit Union, an institution the deposits of which are insured by the National Credit Union Administration Board, located at 340 Wilson Street in Manchester, New Hampshire, was robbed by two males on December 19, 2011.

Through the testimony of tellers who were working at the Northeast Credit Union on December 19, 2012, the government would prove that two men wearing masks entered the credit union at approximately 12:30 p.m. and shouted for everyone to get on the floor. The first male

then jumped over the teller counter and ordered one teller to put all of the money in her drawer into a red duffle bag he was holding. After the teller did so, the first male then grabbed the teller by the neck and forced her to the vault where he ordered her to open the vault and place money from the vault in the bag. When the teller hesitated the robber repeatedly asked "what's more important, the money or your life?"

The second man, later identified as the defendant, Prince Sage, stood in the lobby of the Credit Union, holding what appeared to be a dark handgun in his right hand and ordered customers to lie on the floor. One customer would testify that the second man took approximately $1,000 from his hand which he was attempting to deposit at the time of the robbery.

In addition to surveillance film from the Credit Union, a surveillance film from an Irving gas station convenience store in Tilton, New Hampshire, would be introduced. In the film, the defendant, Prince Sage, is seen entering the store wearing clothes that are clearly consistent with clothes seen being worn by one of the robbers in the Northeast Credit Union. Another man is also seen in the video wearing clothes consistent with those worn by the other bank robber. Three individuals would testify that they drove in a car with Prince Sage and Walter Williams from Laconia to Manchester on December 19, 2012, stopping at the Irving gas station convenience store on the way.

The three individuals would also testify that when they arrived in Manchester, they parked the car in the vicinity of Wilson Street and that Sage and Williams left for a short time and then returned with a red duffel bag. The driver of the car would testify that Williams then gave him $100.00 for gas.

Through the testimony of Special Agents of the FBI, the government would prove that on December 24, Prince Sage was arrested by the Laconia, New Hampshire, Police Department. Sage was given his Miranda rights, waived his rights under Miranda and, during an audio and videotaped interview, gave a full confession to participating in the robbery of the Northeast Credit Union with another male.

The United States would introduce the credit union's surveillance film and other surveillance films as exhibits documenting the clothing worn by the robbers on the day of the robbery. The United States would also introduce exhibits such as the red duffel bag, a black bb gun, and $35,820 in United States currency which were seized from Williams.

Finally, through testimony of credit union employees, the United States would establish that the loss to the Northeast Credit Union was $56,680.00.

4. **Penalties**.

The defendant understands that the penalties for the offense are:

A.  A maximum prison term of 20 years;

B.  A maximum fine of $250,000 (18 U.S.C. §3571);

C.  A mandatory special assessment of $100.00 for each count of conviction which the defendant agrees to pay at or before the time of sentencing, for a total assessment of $100; and

D.  A term of supervised release of not more than three years. The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no

credit for time already spent on supervised release (18 U.S.C. §3583).

In addition to the other penalties provided by law, the Court may also order the defendant to pay restitution to the victim of the offense, pursuant to 18 U.S.C. § 3663 or § 3663A.

5. **Sentencing and Application of the Sentencing Guidelines**.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that the defendant has no right to withdraw the defendant's guilty plea if the applicable advisory guideline range or the defendant's sentence is other than the defendant anticipated, except as expressly provided in this Plea Agreement.

The defendant also understands that the United States and the United States Probation Office shall:

    A.    advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

    B.    respond to questions from the Court;

    C.    correct any inaccuracies in the presentence report;

    D.    respond to any statements made by the defendant or the defendant's counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant is aware that any estimate of the probable sentence or the probable sentencing range relating to the defendant pursuant to the advisory sentencing guidelines that the defendant may have received from any source is only a prediction and not a promise, and is not

binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

### 6. Stipulations.

The United States agrees to recommend a sentence at the low end of the applicable advisory federal sentencing guideline calculated by the court in this case.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and that the defendant is permitted to object to those enhancements.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate unless such recommendations are inconsistent with the terms of this Plea Agreement.

### 7. Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

- A. fails to admit a complete factual basis for the plea at the time the defendant is sentenced or at any other time;
- B. challenges the United States' offer of proof at any time after the plea is entered;
- C. denies involvement in the offense;

- D. gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;
- E. fails to give complete and accurate information about the defendant's financial status to the Probation Office;
- F. obstructs or attempts to obstruct justice, prior to sentencing;
- G. has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;
- H. fails to appear in court as required;
- I. after signing this Plea Agreement, engages in additional criminal conduct; or
- J. attempts to withdraw the plea of guilty.

If the defendant's offense level is sixteen or greater, and the defendant has assisted the United States in the investigation or prosecution of the defendant's own misconduct by timely notifying the United States of the defendant's intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

The defendant understands and agrees that the defendant may not withdraw the defendant's guilty plea if, for any of the reasons listed above, the United States does not recommend that the defendant receive a reduction in the defendant's sentence for acceptance of

responsibility.

The defendant also understands and agrees that the Court is under no obligation to reduce the offense level if it finds that the defendant has not accepted responsibility.

8. **Waiver of Trial Rights and Consequences of Plea**.

The defendant understands that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant. The defendant understands that the defendant has the right:

- A. to plead not guilty or to maintain that plea if it has already been made;
- B. to be tried by a jury and, at that trial, the right to the assistance of counsel;
- C. to confront and cross-examine witnesses against the defendant;
- D. not to be compelled to provide testimony that may incriminate the defendant; and
- E. to compulsory process for the attendance of witnesses to testify in the defendant's defense.

The defendant understands that by pleading guilty the defendant waives and gives up those rights and that if a plea of guilty is accepted by the Court, there will not be a trial of any kind.

The defendant understands that if the defendant pleads guilty, the Court may ask the defendant questions about the offense, and if the defendant answers those questions falsely under oath, on the record, and in the presence of counsel, the defendant's answers may later be used against the defendant in a prosecution for perjury or making false statements.

9. **Acknowledgment of Guilt; Voluntariness of Plea**.

The defendant acknowledges that the defendant:

A. is entering into this Plea Agreement and is pleading guilty freely and voluntarily because the defendant is guilty;

B. is entering into this Plea Agreement without reliance upon any discussions with the United States and without promise of benefit of any kind except as described in this Plea Agreement;

C. is entering into this Plea Agreement without threats, force, intimidation, or coercion of any kind;

D. understands of the nature of the offense to which the defendant is pleading guilty, including the penalties provided by law; and

E. is completely satisfied with the representation and advice received from the defendant's undersigned attorney.

10. **Scope of Agreement**.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. **Collateral Consequences**.

The defendant understands that the defendant will be adjudicated guilty of the offense to which the defendant will plead guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

12. **Satisfaction of Federal Criminal Liability; Breach**.

The defendant's guilty plea, if accepted by the Court, will satisfy any federal criminal liability of the defendant in the District of New Hampshire as a result of the defendant's participation in the conduct which forms the basis of the Indictment this case. The defendant understands that if, before sentencing, the defendant violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw from it.

13. **Waivers**.

A.   **Appeal**.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1. His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2. The sentence imposed by the Court if within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea

Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel in the negotiation of this Plea Agreement or at the sentencing hearing.

B.   **Collateral Review.**

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1. His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2. The sentence imposed by the Court if it falls within, or lower than, the guideline range as determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel in the negotiation of the Plea, Plea Agreement or the sentencing hearing. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C.   **Freedom of Information and Privacy Acts.**

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any

records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D.   **Appeal by the Government**.

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant to pursue an appeal as authorized by law.

14. **No Other Promises**.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15. **Final Binding Agreement**.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and his attorney and until signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16. **Agreement Provisions Not Severable**.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

JOHN P. KACAVAS
United States Attorney

Date: June 6, 2012                                By: [signature]

-12-

> Helen White Fitzgibbon
> Assistant U.S. Attorney
> New Hampshire Bar No. 6833
> U.S. Attorney's Office
> 53 Pleasant Street, 5th Floor
> Concord, NH 03301
> Helen.Fitzgibbon@ussdoj.gov

The defendant, Prince Sage, certifies that the defendant has read this 13-page Plea Agreement and that the defendant fully understands and accepts the terms thereof.

Date: 6/6/12

P. Sage
Prince Sage, Defendant

I have read and explained this 13-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 6/6/12

Paul J. Garrity, Esquire
Attorney for Prince Sage